ABRAM DYER, Respondent, *v.* THE ERIE RAILWAY COMPANY,
Appellant.

It is the duty of railroad corporations to warn persons who may be travel-
ing on a highway which crosses its road by some proper signals of the
approach of trains, and to give such warning in time so that the traveler
may avoid the danger.

It is not enough in all cases that the statutory signals have been given, to
absolve the corporation from a charge of negligence; other precautions
may be required under some circumstances.

It is not, however, for a jury to determine what signals should have been
given in a particular case, and a general submission of that question to
them without qualification or limitation is error.

Where one travels in a vehicle over which he has no control, but at the
invitation of the owner and driver, no relationship of principal and
agent arises between them; and although he so travels voluntarily and
gratitiously, he is not responsible for the negligence of the driver, where
he himself is not chargeable with negligence, and where there is no
claim that the driver was not competent to control and manage the
team.

Contributory negligence, therefore, in such case, on the part of the owner
and driver, is no bar to a recovery against a railroad corporation for
injuries resulting from a collision at a crossing.

The mere fact that a person jumps from a vehicle in which he is traveling,
where there is imminent danger of its coming in collision with an
approaching train at a crossing, does not bar a recovery against the rail-
road corporation, although it apppears that he made a mistake and
would have escaped injury had he remained quiet.

(Argued September 20, 1877; decided November 13, 1877.)

APPEAL from judgment of the General Term of the
Supreme Court, in the fourth judicial department, in favor
of plaintiff entered upon an order denying a motion for a
new trial and directing judgment on a verdict.

This action was brought to recover damages for injuries
alleged to have been sustained through defendant's negligence.
The facts appear sufficiently in the opinion.

*George Gorham*, for appellant.   Whether the signal given
was sufficient was a question of law.   (*Bradley* v. *B. & M.*

*R. Co.*, 2 Cush., 539; *Shaw* v. *B. & W. R. Co.*, 8 Gray, 45; *McGrath* v. *N. Y. C. & H. R. R. R. Co.*, 1 N. Y. Supr. Ct. R., 243; *Ernst* v. *N. Y. C. & H. R. R. R. Co.*, 39 N. Y., 69; *Warner* v. *R. R. Co.*, 45 Barb., 239; *Richardson* v. *N. Y. C. R. R. Co.*, 50 N. Y., 846; *Subley* v. *L. & N. W. R. Co.*, L. R. [Exch.], 13.) Plaintiff having voluntarily placed himself in the hands of the driver was liable for his negligence. (*Thorgood* v. *Bryan*, 8 M. G. & S., 115; *Cattlin* v. *Hills*, id., 123; *Brown* v. *N. Y. C. R. R. Co.*, 32 N. Y., 597; *Beck* v. *E. R. Co.*, 6 Rob., 82, 87.)

*J. H. Waring*, for respondent. Defendant was guilty of negligence in failing to give sufficient signals. (*Weber* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y., 451; *Richardson* v. *N. Y. C. R. R. Co.*, 45 id., 846; *Eaton* v. *Erie R. Co.*, 51 id., 544.) Plaintiff was not responsible for the contributory negligence of the driver. (*Robinson* v. *N. Y. C. & H. R. R. R. Co.*, 65 Barb., 146; *Metcalf* v. *Baker*, 11 Abb. [N. S.], 31; *Webster* v. *H. R. R. R. Co.*, 38 N. Y., 262.) If it appeared that if plaintiff had not jumped from the wagon he would not have been injured, defendant would not be relieved from liability. (*Coulter* v. *Am. M. Un. Ex. Co.*, 56 N Y., 585; *Buel* v. *N. Y. C. R. R. Co.*, 31 id., 214.)

MILLER, J. The plaintiff received the injuries complained of while crossing defendant's track in a public thoroughfare, in the village of Salamanca. At the time, he was riding by the permission and invitation of one Stimpson, the owner of the horses and wagon driven. A single board was placed upon the wagon, between the forward and hind wheels, Stimpson being near the forward end driving, and the plaintiff near the back end. There was evidence showing that there were buildings near the track which intercepted the view of it, and prevented the plaintiff or Stimpson from seeing a train which had been standing south of the buildings, which at this time had started to back over the crossing, as was claimed, without giving Stimpson or the plaintiff any warn-

ing of its approach.  The horses became frightened by the blowing off of steam of engines in the vicinity, increased their speed, became unmanageable, and the plaintiff was thrown, or jumped from the wagon and was injured by the train which was backing.

The defendant seeks a reversal of the judgment in this action for errors in the instructions given by the judge in his charge to the jury, as well as a refusal to nonsuit the plaintiff.  The most serious questions arise upon exceptions to the charge, and these will first be considered.  The first one is, that " it was the duty of the defendant, by proper signals, and in a manner that would communicate to the citizen who was about to approach the crossing, that they were approaching, and give this notice in time, so the traveler could seek a place in safety, if he was on foot, and could avoid the danger; and if he had a team attached to a wagon in which he was riding, as in this instance, he would have an opportunity to stop his team in the place of safety."

There can be no serious question that an obligation devolves upon railroad corporations to warn persons who may be passing, whether on foot or in a team, of the approach of trains, so that such persons may use the necessary caution to avoid the danger and keep out of the way of the train.  This portion of the charge did not, in any way, require a greater degree of vigilance, or a greater exercise of care than ordinarily devolves upon corporations of this character, and anything less than what was embraced in the proposition laid down, would have been of no avail.  It did not assume that proper precautions had not been taken, or proper signals given, or withhold from the jury, a full consideration of that question and the evidence bearing upon the same.  It is not enough, in all cases, that the statutory signals have been given to absolve a railroad corporation from the charge of negligence.  Other precautions may be required under some circumstances, and there may be negligence which will charge the company besides the omission to sound the whistle or ring the bell.  (*Weber* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y.,

451; *Eaton* v. *Erie R. Co.*, 51 id., 544; *Richardson* v. *N. Y. C. R. R. Co.*, 45 id., 846.) These cases are directly in point, and there is no such distinction between them and the one at bar as to render them inapplicable; nor do we think that the language of the judge will bear a construction that it authorized the jury to determine what precautions were necessary, and that such precautions had not been observed. It is equally manifest that the judge, in this portion of the charge, did not intend to direct the jury that the company would be liable because a signal given had not been communicated to a traveler so as to warn him of approaching danger, and enable him to avoid and escape the same. In this respect, all that was charged was to the effect that proper signals should be given in such a mode, and with such noise or manifestation as that a person might hear if he had given attention; and it did not hold that when thus given, if by reason of any obstruction, or for any other cause they were not heard, that the defendant was negligent. The rule, as laid down, was a correct statement of the law, and not liable to any legal objection.

The next exception made by the defendant's counsel, was to the proposition, that it was for the jury to determine and decide what signals should have been given at this time. To which exception the judge responded: "You are to decide whether the bell was rung; and if it was rung, whether it gave sufficient notice to passengers who were approaching," and the defendant's counsel then excepted to the proposition whether the ringing of the bell was sufficient notice. If any portion of the charge last referred to, and covered by the exception, submitted to the jury for their determination what signals in their opinion were necessary and should have been given, then it was clearly erroneous. In *Beisiegel* v. *N. Y. C. R. R. Co.* (40 N. Y., 9), it was held to be error to submit to the jury the question whether the company should keep a flagman stationed at a particular point. Within this decision, it would be equally erroneous to leave to their determination what signals should be required when those which are pre-

scribed by statute, were inadequate or inapplicable and of no avail. It, therefore, becomes important to consider whether any such rule is included in the charge.

Immediately after the first proposition we have discussed, the judge in his charge asked the question, whether the defendant gave any such proper warning, and made such signals as would usually and ordinarily communicate to travelers situated in the case as the plaintiff was, and said, that unless the jury found that the defendant was guilty in this respect, there could be no recovery in the case. He then proceeded to discuss the question whether any signals or notice had been given, referring to the testimony as to the ringing of the bell, and submitted to them whether they believed from the evidence that the bell was rung; and if they did believe it, whether that was a sufficient warning that a train was approaching. He then referred to the duty imposed upon railroad companies to sound the bell and whistle when passing along the line of their road outside of cities and villages at intervals for eighty rods before they reach a crossing, stating that in this instance it could not be complied with, because the car was stationary, " so that this provision of law was not incumbent, and it is not for the defendant to show they sounded a whistle or bell for eighty rods; that they are only to give such other signals as would notify the public of the approach of the train, and in this particular case, what it should be is for you to decide." Then followed the exception and the response of the judge, and another exception to his answer, as hereinbefore stated.

Taking a cursory view of the entire portion of the charge referred to, perhaps there may be some hesitation whether it was not susceptible of the construction that the judge merely intended to submit to the jury whether the defendant was not negligent in failing to give other signals, or in not doing something more than was done, instead of leaving to their determination what the signals should be. A careful examination of the language employed must however lead to a different conclusion. He stated very explicity that other

signals should be given, and in equally clear language conveyed the idea that the jury were to determine the character of such additional signals, and what they should be. It is said that the portion of the charge excepted to may be considered as referring only to signals which might be given on the engine or the train, and none other, and may thus be upheld within the decisions. It is sufficient to say in answer to this suggestion that on its face it was too broad to bear such an interpretation; that it was general in its character, so as to embrace all and every kind of signals which might be given either on the engine or train, or outside of the same, and neither at the time, nor when the judge's attention was especially called to it by the exception, was the charge restricted or circumscribed in its application, but left without any limitation whatever, so as to warrant the conclusion that all kind of signals were not intended to be included. At least the jury may have been misled as to the meaning of the judge, and in the exercise of their judgment have required, before arriving at a verdict, that in order to relieve the defendant from the allegation of negligence, that the corporation should have employed a flagman, or taken some other outside precautions not required by law, or a due and proper regard to the safety of those who might be passing across the railroad track.

The subsequent remarks of the judge do not relieve the portion of the charge excepted to from its objectionable character, and it was not changed or altered thereby in any respect so as to qualify its apparent meaning and purport. It is not necessary to discuss the danger of leaving to the determination of a jury, questions which are really of a legal character, which it is the province of the courts to decide; and it is easy to see that the rights of the defendant might have been seriously affected by the ruling considered. It was clearly erroneous, and for that reason must lead to a reversal of the judgment. As a new trial must be granted on the ground stated, it is well to consider the other questions raised upon the trial. It is insisted that the court erred in

charging the jury that the negligence of Stimpson was no bar to the action, and that the negligence of the driver would not prevent a recovery. The solution of the question raised must depend upon the position which Stimpson occupied towards the plaintiff. The plaintiff rode with Stimpson at his invitation, gratuitously, in Stimpson's wagon. The latter driving the team exercised entire control over it, and was traveling entirely on business of his own. Stimpson was not hired by the plaintiff, or in his employ, or in any sense his agent, nor had the plaintiff any control, or direction of the team or its management, or over Stimpson himself. There is no pretense but that Stimpson was entirely competent to take charge of the team himself, nor that he did not possess the requisite skill to manage and control the same. It is difficult to see upon what principle the negligence of Stimpson can affect the plaintiff or be imputable to him. It is true that the plaintiff occupies a different attitude from one who is compelled to travel by a train of cars, if he does travel at all (*Chapman* v. *New Haven R. R. Co.*, 19 N. Y., 341), and his traveling in the vehicle of Stimpson was entirely voluntary, but that circumstance does not create the relationship of agent and principle, or in any way add to the obligation of the plaintiff to answer for Simpson's negligence. We have been referred to a number of cases by the learned counsel for the defendant, which it is claimed sustain the theory that the negligence of the driver bar a recovery in an action of this nature, and have given them a critical examination. The most, we think, which can be claimed from any of these decisions, is that the question had not been decided and was still open for review. But, however that may be, we think that the principle now involved has been deliberately considered, and put at rest by the recent decision in this court in the case of *Robinson* v. *N. Y. C. & H. R. R., R. Co.* (66 N. Y., 11), and that this case is directly in point. In the case cited, a female had accepted an invitation to ride in a buggy with a person who was entirely competent to manage a horse, and it was held, that a charge that if defendant was

negligent, and the plaintiff free from negligence herself, she was entitled to recover, although the driver might be guilty of negligence which contributed to the injury was proper. The case was distinguished from one where the persons present were engaged in a joint enterprise in the sense of mutual responsibility for each other's acts, as in *Beck* v. *East River Ferry Co.* (6 Robt. 82), and the doctrine is laid down that there is no relationship of principal and agent, or master and servant, where one person is gratuitously and voluntarily riding in the vehicle of another. It is not apparent that any distinction exists between the two cases, as in both the plaintiff was a voluntary passenger. It is said that in the case of *Robinson* v. *N. Y. C. & H. R. R. R. Co.* (*supra*), that the injury was the result of a positive act of negligence, while in the case at bar it was caused by the positive act of Stimpson, the defendant only contributing to it by the omission to take proper precaution. It is difficult to see, even if we assume that Stimpson's act occasioned the result, how it can affect the principle involved, unless it may be assumed that the plaintiff in some way could have prevented it. No such distinct proposition was presented upon the trial to the judge, or request made to charge the jury to that effect, and that question therefore does not now arise. It was also said, in the opinion in the case last referred to, that none of the authorities cited sanctioned the application of the principle to the facts of that case, and the same rule is applicable here. Within this case, which is decisive against the defendant upon the question considered, there was no error in that portion of the charge last discussed.

There was no error in the charge of the judge to the effect that if the defendant was negligent, and the plaintiff was not guilty of contributory negligence, the plaintiff's jumping from the wagon under the circumstances, even if he made a mistake, would not prevent a recovery. The danger being imminent, the law does not demand that accuracy of judgment which would be required under other circumstances; and the authorities hold that in such cases, an error of this

description is not fatal to a recovery, and does not relieve the defendant from liability. (*Twomley* v. *C., P., N. & E. R. R. R. Co.*, 69 N. Y., 158; *Coulter* v. *Am. M. U. Ex. Co.*, 56 id., 585; *Buel* v. *N. Y. C. & H. R. R. R. Co.*, 31 id., 314.)

We think that the motion for a nonsuit was properly denied. It is said, in this connection, that the plaintiff was guilty of contributory negligence in not requesting Stimpson to check his horses when approaching the track, and in not looking easterly in the direction of the approaching cars. The judge charged that it was the duty of the plaintiff to lookout for himself, and if he was guilty of negligence in not doing this, so as to observe whether a train was approaching, he could not recover. He also charged that it was his duty to look up and down the track as he approached the crossing, and to ascertain by his observation by seeing, if he could, whether a train was approaching; and that as he did not look to the east, the way which the train approached, that it would be negligence, and prevent a recovery if the jury found, as a matter of fact, that if he had looked he could have seen this train approaching in time to give notice to Stimpson, the owner of the team, that there was danger of a collision. The charge made presented the question whether the plaintiff could have seen the train if he had looked; and there was testimony showing that there was a building in the way, which may have obstructed his vision and prevented his seeing; and the jury would have been justified in so finding.

If the plaintiff could not have seen the train, if he had looked in an easterly direction, there would have been no necessity or occasion for his looking there, as it would not furnish him any information which would be of service or aid here in any way in communicating with Stimpson. He could impart nothing to Stimpson which would contribute to prevent the catastrophe, and hence he was under no obligation to request him to check his horses for any such reason.

No distinct request was made to the judge to charge that

the plaintiff should have requested Stimpson to check his horses; and as the charge as made covered the question as to the plaintiff's negligence, in respect to looking, it is not apparent how the circumstance that the plaintiff made no such request to Stimpson, would, of itself, constitute contributory negligence, which would authorize a nonsuit. Nor was there any ground for granting the motion, for the reason that the evidence shows that the bell was rung, and the testimony was sufficiently conflicting to present that question for the determination of the jury. Although the engineer in charge of the train swore that it was, the plaintiff testifies that he listened, and did not hear any bell, or whistle or noise of the train. This presented a question of fact, and the case is not brought within the principle decided in *Culhane* v. *N. Y. C. & H. R. R. R. Co.* (60 N. Y., 133), that, as against affirmative evidence of credible witnesses of the ringing of a bell, there must be something more than the testimony of one who did not hear, and it must appear that their attention was directed to the fact at the time.

The evidence was direct that the plaintiff was giving his attention to the subject, and hence the case cited is not in point.

For the error stated, the judgment must be reversed and a new trial granted, with costs to abide the event.

ALLEN and FOLGER, JJ. concur, EARL, J. concurs in result; CHURCH, Ch. J., RAPALLO and ANDREWS, JJ. dissent.

Judgment reversed.